# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., <br><br> Plaintiff, <br><br> v. <br><br> ESTEBAN GARCIA PACHECO, *et al.*, <br><br> Defendant. | Case No. 18-cv-1973-BAS-KSC <br><br> **ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT** <br><br> **[ECF No. 12]** |

Presently before the Court is Plaintiff Joe Hand Promotions, Inc.'s Motion for Default Judgment against Esteban Garcia Pacheco and Alina Santamaria, individually, and d/b/a Birrieria El Primo. ("Mot.," ECF No. 12.) The Court finds this Motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS IN PART** Plaintiff's Motion.[1]

## I.    BACKGROUND

Plaintiff filed a complaint against Defendants Esteban Garcia Pacheco, Alina Santamaria, and d/b/a Birrieria El Primo ("Defendants") alleging copyright

---

[1] Plaintiff also filed a motion for leave for permission to file a CD-rom of the videotape of the inside of the Establishment non-electronically. (ECF No. 14.) The Court **DENIES** this request as moot. The CD-rom proffered by Plaintiff is not necessary for the Court's determination of this Motion.

infringement and unauthorized reception of cable service, and unauthorized publication or use of communications. ("Compl.," ECF No. 1.) On November 3, 2018, Plaintiff filed affidavits of service indicating that Defendants Esteban Garcia Pacheco and Alina Santamaria had been served. (ECF Nos. 4, 5.) Plaintiff received a clerk's entry of judgment, and then filed the Motion for Default Judgment now before the Court.

Plaintiff is a Pennsylvania Corporation that promotes and distributes commercial licenses to broadcast certain television events. (Compl. ¶ 5.) Plaintiff claims it is the sole owner of the commercial copyright and distribution rights to a televised match between boxing superstars Floyd Mayweather, Jr., and Conor McGregor, aired live on August 26, 2017 (the "Broadcast"). (*Id.* ¶ 6.) To air the Broadcast, commercial establishments were required to pay Plaintiff a fee and obtain a license. (*Id.* ¶ 25.) Plaintiff also provides access to its programming for non-commercial, private viewing at a significantly discounted price to the commercial license rate schedule. (*Id.* ¶ 26.) The non-commercial option includes copyright language that alerts purchasers that "unauthorized reproduction or distribution of the copyrighted work is illegal." (*Id.* ¶ 27.) Unscrupulous business owners can usurp Plaintiff's commercial license requirement by purchasing the private-viewing option and displaying it on monitors in commercial establishments. (*Id.*)

Defendants allegedly aired the Broadcast live in their restaurant, Birrieria El Primo. (*Id.* ¶ 28.) Plaintiff claims it never authorized Defendants to exhibit the Broadcast at Defendants' restaurant, and that Defendants never paid Plaintiff for the commercial rights to the Broadcast.[2] (*Id.*) Plaintiff also alleges that Defendants

---

[2] Plaintiff discusses the fact that without discovery, it is unable to determine how Defendants gained access to the Broadcast. (Compl. ¶ 30.) It notes that there "are multiple . . . unauthorized methods of accessing the Broadcast," including splicing a cable line, purchasing a residential pay-per-view license instead of a commercial license, or using a residential-use cable box to access the Broadcast. (*Id.*) There are also apparently newer methods of streaming the Broadcast made possible by the advent of social media platforms. (*Id.*) Plaintiff asserts that, regardless of how Defendants acquired the Broadcast, the fact remains that Defendants did not purchase a commercial license from

advertised the Broadcast on social media prior to the airing. (*Id.*) Plaintiff attached three exhibits to its Complaint that appear to be screenshots of Birrieria El Primo's Facebook page, showing Defendants advertised that the restaurant planned to air the Broadcast. (Exhibit B to Compl., ECF No. 1-3.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure Rule 55 governs the two-step process for obtaining a default judgment. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). First, Rule 55(a) provides: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Second, after the clerk enters default, a party must seek entry of default judgment under Fed. R. Civ. P. 55(b). The decision whether to grant default judgment pursuant to Rule 55(b) is within the discretion of district courts. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its discretion to grant or deny a motion for default judgment, the Court considers the following factors:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 787 F.2d at 1471-72.

## III. DISCUSSION

### A. Procedural Matters

Plaintiff has satisfied the procedural requirements for default judgment pursuant to Rules 55 and 54(c) of the Federal Rules of Civil Procedure. Both Defendants were personally served with the summons and Complaint and failed to

---

Plaintiff but did air the Broadcast in their restaurant, which itself gives rise to Plaintiff's claims.

plead or otherwise defend this action. (ECF Nos. 4, 5.) *See Travelers Cas. & Sur. Co. of Am. v. Brenneke*, 551 F.3d 1132, 1135 (9th Cir. 2009) ("A federal court is without personal jurisdiction over a defendant unless the defendant has been served in accordance with Federal Rule of Civil Procedure 4.") The Court has personal jurisdiction by virtue of Defendants' personal service. *Burnham v. Superior Court of Cal., Cnty. of Marin*, 495 U.S. 684 (1990) (holding that the exercise of personal jurisdiction based on service of process comports with traditional notions of fair play and substantial justice). Finally, the Court has federal question subject matter jurisdiction over this case because it involves federal questions. 28 U.S.C. § 1331.

**B.    Default Judgment**

Before entering default judgment, the Court must review the factors enumerated in *Eitel*.

### 1.    Factors One and Six: Prejudice and Excusable Neglect

The first and sixth *Eitel* factors weigh in favor of granting Plaintiff's Motion. Plaintiff, who is "likely without other recourse for recovery," would be prejudiced if this Court denies its motion. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Furthermore, Defendants have inexplicably failed to appear in this action. Default judgments are granted more often where the defendant has never appeared in the action and no reasonable excuse for their absence has been proffered. *See, e.g., Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988) (finding that default judgment was proper where the defendant had notice of the action and still failed to answer). Plaintiff submitted proof that Defendants were properly served, indicating that Defendants have actual notice of this action. (ECF Nos. 4, 5.) The Court has not received evidence suggesting an excuse for Defendants' absence.

### 2.    Factors Two and Three: Merits and Sufficiency

The second and third *Eitel* factors address the substantive merits of the claim and the sufficiency of the complaint and are often analyzed together. *See Dr. JKL*

*Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010). The Ninth Circuit has suggested that these factors require that a plaintiff "state a claim on which the [plaintiff] may recover." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). The Court will analyze each of Plaintiff's legal claims.

### a. 47 U.S.C. §§ 553 and 605

47 U.S.C. §§ 553 and 605 deal with two approaches to the same problem. Section 553 prohibits unauthorized interception or receipt of communications via cable service, and section 605 prohibits the same via satellite service. *See J & J Sports Prods., Inc. v. Manzano*, No. C-08-1872 RMW, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008) ("A signal pirate violates section 553 if he intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast."). Often, when a plaintiff sues alleging a commercial establishment exhibited protected media such as the Broadcast in the present case, the plaintiff will claim violation of both sections 553 and 605 because he has yet to determine the exact means by which the defendant acquired unauthorized access to the broadcast. *See, e.g.*, *J & J Sports Prods., Inc. v. Ro*, No. C 09-2860 WHA, 2010 WL 668065, at *3 (N.D. Cal. Feb. 19, 2010). Restaurant owners are liable for unauthorized airings of copyrighted programming merely by virtue of their management powers and vested financial interests in the fruits of such activities. *See J&J Sports Prods. v. Owens*, No. 09-cv-1614 JLS-CAB, 2010 WL 11519395, at *2 (S.D. Cal. Mar. 2, 2010).

Upon entry of default, the factual allegations in Plaintiff's Complaint, except those relating to damages, are deemed admitted. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). Here, Plaintiff has alleged that Defendants own and operate Birrieria El Primo, that Plaintiff has the exclusive right to distribute the Broadcast to commercial establishments, that Plaintiff did not authorize Defendants to air the Broadcast in their establishment, and that Plaintiffs did in fact air the Broadcast. (Compl. ¶¶ 6, 9, 10–15, 28–30.) This is sufficient to show unauthorized interception or receipt of communications.

### b. Copyright Infringement

"Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright." 17 U.S.C. § 501(a) (the "Copyright Act"). For Plaintiff to prevail on its claim for copyright infringement, it must prove: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 111 S. Ct. 1282, 1296 (1991).

On the first prong, Plaintiff alleges that it "is the copyright owner of the exclusive rights of distribution and public performance as to commercial establishments to the Broadcast, including . . . the entire television Broadcast . . . via closed circuit television and via encrypted satellite signal." (Compl. ¶ 43.) Plaintiff provided an issued copyright registration number to support its claim. (*Id*.); *see United Fabrics Intern., Inc. v. C&J Wear, Inc.*, 630 F.3d 1255 (9th Cir. 2011) ("A copyright registration is 'prima facie evidence of the validity of the copyright and the facts stated in the certificate.'" (quoting 17 U.S.C. § 410(c)). Accepting the allegations as true, Plaintiff has satisfied the first prong.

Plaintiff further alleges that Defendants advertised the Broadcast on their Facebook page and exhibited the Broadcast in their establishment without a license. (Compl. ¶¶ 46–47.) Accepting the allegations as true, Plaintiff has satisfied the second prong. The merits and sufficiency of the allegations favor entering judgment on Plaintiff's claim for violation of the Copyright Act.

### 3. Factor Four: Sum of Money at Stake

The fourth *Eitel* factor examines the amount of money at issue. 782 F.2d at 1471. "[T]he court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176–77. "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable. Default judgment is disfavored when a large amount of money is involved or unreasonable in light of the

potential loss caused by the defendant's actions." *HICA Educ. Loan Corp. v. Warne*, No. 11-CV-04287-LHK, 2012 WL 1156402, at *3 (N.D. Cal. Apr. 6, 2012) (citations and internal quotation marks omitted).

Here, Plaintiff seeks statutory damages, which are alleged in the Complaint. Although ultimately the amount of statutory damages sought may weigh against entry of default judgment, as discussed below, the Court finds it appropriate to reduce the amount of damages requested by Plaintiff in the Motion. Therefore, this factor does not weigh against granting the Motion.

### 4. Factor Five: Possibility of Dispute over Material Facts

The fifth *Eitel* factor examines the likelihood that the material facts in the complaint are disputed. 782 F.2d at 1471–72. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *PepsiCo*, 238 F. Supp. 2d at 1177 (citing *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987)). Because Defendants have not answered, there is unlikely to be a dispute of material facts in this case.

### 5. Factor Seven: Policy Considerations

The seventh *Eitel* factor concerns "the general rule that default judgments are ordinarily disfavored." 782 F.2d at 1472. "While the public policy favoring disposition of cases on their merits weights against default judgment, that single factor is not enough to preclude imposition of this sanction" on its own. *Rio Props., Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1022 (9th Cir. 2002). "Moreover, [a] Defendant's failure to answer Plaintiff's Complaint makes a decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177. Thus, while this factor weighs against default, this Court is not precluded from entering default judgment in this action.

### 6. Weight of the Factors

Based on the foregoing analysis, the Court finds that the *Eitel* factors in favor of granting default judgment outweigh the strong public policy favoring decisions on

the merits. The Court **GRANTS** Plaintiff's Motion for Default Judgment on Plaintiff's claims.

### C. <u>Damages Calculation</u>

Plaintiff requests a total award of $75,000 under all alleged statutes, plus costs and attorney's fees. (ECF No. 12-6.) Under Rule 8(a)(3), a plaintiff's demand for relief must be specific, and he "must 'prove up' the amount of damages." *Philip Morris USA Inc. v. Banh,* No. CV 03-4043 GAF (PJWx), 2005 WL 5758392, at *6 (C.D. Cal. Jan. 14, 2005); *Elektra Entm't Grp., Inc. v. Bryant,* No. CV 03-6371 GAF (JTLx), 2004 WL 783123, at *5 (C.D. Cal. Feb. 13, 2004). Rule 54(c) limits the relief that can be sought in a motion for entry of default judgment to that identified in the complaint. Fed. R. Civ. Prov. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.") Also, as noted, a defaulting defendant is not deemed to have admitted facts concerning damages alleged in the complaint. *PepsiCo.*, 238 F. Supp. 2d at 1177 ("Upon entry of default, all well pleading facts in the complaint are taken as true, except for those relating to damages." (citing *Televideo Sys.*, 826 F.2d at 917–18)).

Where the amount of damages claimed is a liquidated sum or capable of mathematical calculation, the court may enter default judgment without a hearing. *Davis v. Fendler,* 650 F.2d 1154, 1161 (9th Cir. 1981). When it is necessary for the plaintiff to prove unliquidated or punitive damages, the court may require plaintiff to file declarations or affidavits providing evidence for damages in lieu of a full evidentiary hearing. *Transportes Aereos De Angola v. Jet Traders Invest. Corp.*, 624 F. Supp. 264, 266 (D. Del. 1985).

#### 1. 47 U.S.C. §§ 553 and 605

Under 47 U.S.C. §553(c)(3)(A)(ii), a court may award statutory damages of $250 to $10,000 "as the court considers just." Furthermore, if the offense was committed willfully for the purpose of direct commercial advantage, "the court in its discretion may increase the award of damages" to not more than $50,000.

§553(c)(3)(B). Under 47 U.S.C. § 605(e)(3)(C)(i) & (ii), a court may award statutory damages in the amount of $1,000 to $10,000 with an additional $100,000 if the court finds the conduct was willful and for the purpose of direct commercial advantage.

"A signal pirate violates section 553 if he intercepts a cable signal [and] he violates section 605 if he intercepts a satellite broadcast. But he cannot violate both by a single act of interception." *Joe Hand Prods. v. Holmes*, No. 2:12-cv-535-SU, 2015 WL 5144297, at *4 (D. Oregon Aug. 3, 2015). Plaintiff recognizes that it cannot recover under both 47 U.S.C. §553 and §605, but, states it "elects" to recover under section 605. (Mot. at 11.) Plaintiff makes it clear it cannot determine whether Defendants intercepted the Broadcast via satellite or cable. As district courts have pointed out in other cases involving this plaintiff, if a plaintiff does not make an adequate showing of which statute was violated, generally the court will opt for the lower limits. *See Holmes*, 2015 WL 5144297, at *4. In this case that would limit damages to $10,000 in actual damages and $50,000 in enhanced damages.[3]

The guidelines for measuring statutory damages are not clearly delineated. The Ninth Circuit has mentioned consideration of the nature of the copyright and the circumstances of the infringement. *Peer Intern. Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990). In addition, whether the act involves a single act of piracy and whether the Defendant is a repeat offender could be significant. Finally, Plaintiff provides evidence of actual damages, that is, the amount of the licensing fee if Defendants had properly licensed the Broadcast ($3,700) and the potential profit the night of the Broadcast. ($15.00 cover charge with a capacity for 51 to 100 patrons). (ECF No. 12-2, Exhs. A, C, and D.) Ultimately, the amount of damages is up to the Court's discretion and "a sense of justice." *Peer Intern. Corp.,* at 1336.

A quick review of the cases involving this same Plaintiff and default judgment with similar circumstances demonstrate that the district courts are unanimous in

---

[3] Although the Court calculates Plaintiff's damages under section 553, the Court's analysis would result in the same award under section 605.

finding that Plaintiff's request for the maximum or close to the maximum in statutory damages is unreasonable. *See e.g. Joe Hand Promotions, Inc. v. Streshly,* 655 F. Supp. 2d 1136 (S.D. Cal. 2009) (accusing Plaintiff of reaching for the stars and rejecting the request for $100,875 in statutory damages); *Joe Hand Prods. v. Holmes*, No. 2:12-cv-535-SU, 2015 WL 5144297 (D. Oregon Aug. 3, 2015) (rejecting request for $210,800 and granting $1900); *Joe Hand Promotions, Inc. v. Be*, No. 11-cv-1333 LHK, 2011 WL 5105375, at *1 (M.D. Pa. Oct. 26, 2011) ("As it has in countless similar actions filed around the country, plaintiff seeks the maximum statutory damages," but was awarded $2,900); *Joe Hand Promotions, Inc. v. Tu Minh Nguyen*, No. 10-cv-3504-LHK, 2011 WL 164 2306 (N.D. Cal. May 2, 2011) (rejecting request for $100,000 and awarding $4,925).

In this case, the Court considers a variety of factors presented by Plaintiff. Plaintiff points out that legal licensing of this Broadcast would have cost the Defendants $3,700. (ECF No. 12-2, Exh. A.) Therefore, the Court finds it appropriate to award Plaintiff at least $3,700 in statutory damages.

The Court concurs, however, that simply awarding the licensing fee would be insufficient to deter future violations. Although there is no proof of how many people actually paid the cover charge on the night of the Broadcast, Plaintiff does provide evidence that Defendants charged $15 per person and that the fire code capacity of the bar was between 51 and 100 people, rendering potential profits of $765 to $1,500. (ECF No. 12-2, Exh. C and D.) Therefore, the Court finds it is appropriate to award an enhanced amount since Plaintiff has shown the offense was committed willfully for the purpose of direct commercial advantage. However, the Court notes that the Broadcast only occurred on one night, and there is no evidence that Defendants are repeat offenders. Exercising its discretion, the Court determines that a just award under all the circumstances of this case would be $5,200. This reflects statutory damages of $3,700 and enhanced damages of $1,500.

///

### 2. Copyright Infringement

Similarly, under 17 U.S.C. § 502(a)(1), the Court may award statutory damages in amount between $750 and $30,000 "as the court considers just." And, if the Court finds the violation was done willfully, the Court may award an additional amount not to exceed $150,000. Assessing all the factors as discussed above, the Court awards an additional $750 in statutory damages for copyright infringement and declines, in its discretion, to award any enhanced damages under this section.

### D. Attorney's Fees and Costs

Under section 553, the Court may, but is not required to, award costs and attorney's fees. 47 U.S.C. §553(c)(2)(C). The Court, in its discretion, agrees costs in the amount of $850 should be awarded in this case. Plaintiff requests an additional amount to cover the costs of the undercover investigation before it filed this Complaint.

"Courts have used their discretion to come to different conclusions on the issue of investigative costs." *Bertram Music Co. v. Yeager Holdings of Calif., Inc.*, No. S-07-1766 LEW GGH, 2008 WL 2055480, at *3 (E.D. Cal. May 6, 2008) (listing cases). This Court agrees with the conclusion in *Bertram Music* "that investigative costs are part of actual damages." *Id.* Since Plaintiff has elected to seek statutory damages, the Court declines to include investigative costs in the costs awarded in this case.

Additionally, the Court will award Plaintiff attorney's fees in the amount of $385. Plaintiff requests additional attorney's fees for "anticipated" time preparing for the hearing on the default motion and "anticipated" time spent appearing in court on this Motion. However, the Court did not require an appearance for this Motion, so declines to award the requested attorney's fees for any court appearance.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Plaintiff's Motion for Default Judgment (ECF No. 12), **DENIES AS MOOT** Plaintiff's motion to file

a CD-Rom exhibit non-electronically (ECF No. 14), and **ORDERS** the Clerk of the Court to enter judgment in favor of Plaintiff and against both Defendants jointly and severally in the amount of $5,950, plus $850 in costs and $385 in attorney's fees, for a total of $7,185. The Clerk is directed to close this case.

**IT IS SO ORDERED.**

**DATED: May 23, 2019**

Hon. Cynthia Bashant
United States District Judge